Dennis ROLON, Plaintiff–Appellee,

v.

John WARD, Supervisor, Town of Wallkill, sued in his official and individual capacity and Robert Hertman, Chief of Police, sued in his official and individual capacities, Defendants–Appellants,

Town of Wallkill, Defendant.

No. 08–5640–cv.

United States Court of Appeals, Second Circuit.

Sept. 4, 2009.

James A. Randazzo, Gelardi & Randazzo LLP, Hawthorne, NY, for Appellants.

Michael H. Sussman, Sussman & Watkins, Goshen, NY, for Appellees.

Present: RALPH K. WINTER, ROSEMARY S. POOLER, Circuit Judges, ROSLYNN R. MAUSKOPF,[1] District Judge.

**SUMMARY ORDER**

John Ward, Town of Wallkill Supervisor, and Robert Hertman, Town of Wallkill Police Chief, appeal from the district court's denial of Ward and Hertman's motion for summary judgment on the grounds that they were entitled to qualified immunity in a First Amendment retaliation case brought by Wallkill Police Officer Dennis Rolon. We assume the parties' familiarity with the facts, proceedings below, and specification of the issues on appeal.

In the spring of 2000, Rolon filed a lawsuit in federal court alleging that his due process rights had been violated by the police department and various police and town officials. That case eventually settled in 2001, and Rolon received an $85,000 settlement. In August, 2000—several months after that initial litigation commenced—Rolon was suspended without pay for a variety of alleged acts of misconduct. In February 2002, the arbitrator issued an opinion and award finding Rolon guilty of three of the twelve charges. However, the arbitrator also found the Town failed to properly follow the procedures set forth in the collective bargaining agreement in suspending Rolon without pay. As a remedy, the Town was ordered to reinstate Rolon to active duty with full back pay less two days' pay as a penalty for the three charges. Rolon contends he was immediately retaliated against upon his return to work in March, 2002, and that such retaliation continued for several years, in the form of suspensions and other disciplinary actions.

While the denial of a motion for summary judgment is not typically immediately appealable, an interlocutory appeal may be taken from an order denying a defendant's motion for qualified immunity when the denial is based only on a question of law. *Salim v. Proulx,* 93 F.3d 86, 90 (2d Cir.1996). "While we may not inquire into the district court's determination that there was sufficient evidence to create a jury question, we may resolve whether, as a matter of law, the defendants are entitled to qualified immunity because the law was not clearly established or because, on the facts assumed for the purposes of appeal, the defendants' conduct did not constitute a violation of a constitutional right." *Skehan v. Village of Mamaroneck,* 465 F.3d 96, 104–105 (2d Cir.2006) (overruled on other grounds).

Government officials performing discretionary functions are entitled to qualified immunity "from federal constitutional claims ... as long as their actions could reasonably have been thought consistent with the rights they are alleged to have

1. The Honorable Roslynn R. Mauskopf, United States District Judge for the Eastern District of New York, sitting by designation.

violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). A court must determine (1) whether a constitutional violated had been committed; and (2) whether a reasonable official in defendant's position ought to have known that he was violating plaintiff's federal constitutional rights by doing what plaintiff alleges he did. *Pearson v. Callahan*, 555 U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). A court may address the prongs in whatever sequence is most logical "in light of the particular circumstances at hand." *Id.* at 818.

To survive a defense motion for summary judgment on a First Amendment retaliation claim, plaintiff must set forth evidence demonstrating (1) he engaged in protected First Amendment activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Cotarelo v. Vill. of Sleepy Hollow Police Dep't*, 460 F.3d 247, 251 (2d Cir.2006). Once plaintiff sets out a prima facie case, summary judgment is not appropriate unless the defendant establishes as a matter of law that he would have taken the same adverse employment action even absent the protected conduct. *Id.* at 253.

Appellants concede that Rolon established the first element—that is, that the 2000 lawsuit and 2001 arbitration constitutes protected First Amendment speech. Appellants further concede that the right not to be retaliated against for the exercise of First Amendment rights "is generally well established." Appellants' primary argument on appeal is that the acts Rolon complains of are not adverse employment actions.

"Whether an undesirable employment action qualifies as being 'adverse' is a heavily fact-specific, contextual determination." *Zelnik v. Fashion Institute of Tech.*, 464 F.3d 217, 226 (2d Cir.2006). "In

the context of a First Amendment retaliatory claim, we have held that only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." *Id.* (internal quotations and citations omitted). "In this context, adverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." *Id.* (internal quotation and citation omitted). "This list of retaliatory conduct is certainly not exhaustive, however, and lesser actions, however, and lesser actions may also be considered adverse employment actions." *Id.* Being forced to defend against disciplinary charges may constitute an adverse employment action. *Albert v. City of Hartford*, 529 F.Supp.2d 311, 335 (D.Conn.2007). Accepting the facts as set forth by Rolon— as we must on a motion for summary judgment—it cannot be said that defendants are entitled to qualified immunity as a matter of law.

The district court properly relied on *Phillips v. Bowen*, 278 F.3d 103, 109 (2d Cir.2002), where it was held that a "combination of seemingly minor incidents" over a period of time may give rise to a First Amendment retaliation claim once the incidents reach a critical mass. *Id.* at 109. To make such a showing, plaintiff must prove, using an objective standard, that "the total circumstances of [his] working environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." *Id.* The *Phillips* Court upheld a jury verdict finding plaintiff was retaliated against for First Amendment speech based on "defendants' failure to provide her with an adequate bullet-proof vest or proper instruction regarding transfer of a prisoner, or defendants' humiliating instruction to plaintiff about use of a time clock," because while such incidents

"may seem minor when viewed in isolation, a finder of fact looking at them collectively over a period of several years reasonably could find that they rise to the level of actionable harm." *Id.* at 109–10. Here, Rolon has been the focus of numerous disciplinary actions for a variety of misdeeds that occurred since 2002. Viewing the facts in the light most favorable to Rolon, a reasonable jury could find plaintiff was charged with an inordinate number of disciplinary infractions to an extent beyond what one would expect in a normal workplace. Indeed, as discussed further below, Rolon introduced record evidence sufficient to raise a question of fact that other officers committed similar infractions, but were not subject to similar discipline.

Defendants also argue that because Rolon either admitted to the acts underlying the charges or cannot recall the underlying acts, and because in several cases Rolon consented to an adverse action to resolve Notices of Discipline, it was objectively reasonable for the Chief to take the actions that he did. This analysis misses the mark. The gravamen of Rolon's complaint is not that he was wrongly accused of committing the infractions for which disciplinary actions were taken, but that he was singled out for discipline, and subject to more severe discipline, as compared to others who committed the same or similar infractions.

Equally unavailing is defendants' argument that they were not personally involved in the disciplinary actions. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Provost v. City of Newburgh,* 262 F.3d 146, 154 (2d Cir.2001). A supervisory official personally participates in challenged conduct not only by direct participation, but by (1) failing to take corrective action; (2)

creation of a policy or custom fostering the conduct; (3) grossly negligent supervision, or deliberate indifference to the rights of others. *Hayut v. State of Univ. of New York,* 352 F.3d 733, 753 (2d Cir.2003). Here, the collective bargaining agreement required both Hertman and Ward's active participation in the disciplinary process. If the police chief determined an employee should be disciplined for incompetence or misconduct, the employee was served with a Notice of Discipline setting out the charge of incompetence or misconduct as well as the proposed penalty. The Notice of Discipline needed to be served within 180 days of the triggering event. After service, a disciplinary interview between the employee and the Chief is held for the purpose of discussing the matter. The chief then makes a finding as to the employee's guilt, and may impose a disciplinary penalty. Appeals are taken to the Town Supervisor, who makes the final decision on the charges and the appropriate penalty to be imposed. formal meeting on the charges and penalty. Once the Supervisor makes a decision, the union may grieve it to the arbitrator. The record reflects Ward participated in disciplining Rolon.

Finally, defendants argue there is no evidence of retaliatory motive by defendants. Defendants can prevail on a First Amendment retaliatory motion if defendants can show by a preponderance of the evidence that the same discipline would have taken place even in the absence of the protected conduct. *Cotarelo,* 460 F.3d at 253. The district court properly found that Rolon raised a question of fact as to whether officers committing similar infractions received similar discipline. Moreover, the overall quantity of evidence submitted by Rolon as to his disparate treatment raises a question of whether he was singled out for harsher disciplinary treatment because of animus against him

as a whistle blower. *See, e.g., Skehan*, 465 F.3d at 107 ("[s]o long as [defendant's] animus was a substantial or motivating factor" behind the decision, the fact that the defendant "had other legitimate reasons is irrelevant; because the plaintiffs allege that [defendant's] motivation was unconstitutional and the district court found the issue to be disputed, we must accept the plaintiff's version of the facts.").

In sum, "our precedent allows a combination of seemingly minor incidents to form the basis of a constitutional retaliation claim once they reach a critical mass." *Phillips*, 278 F.3d at 109. The Circuit has made clear that in the context of a First Amendment retaliation case, we apply a less demanding standard than in other Section 1983 cases, looking only for proof that a similarly situated individual would be deterred from exercising his constitutional rights. *Zelnik*, 464 F.3d at 225. Taken together, the record evidence submitted by Rolon is sufficient to raise a question of material fact as to whether defendants are entitled to the protections of the qualified immunity defense.

We have considered defendants' remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment and order of the district court are **AFFIRMED**.